# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHARLES DAVIS,

    *Plaintiff,*

v.

    Case No. 12-2013-EFM

UNIFIED SCHOOL DISTRICT No. 500
and STEPHEN VAUGHN,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Charles Davis filed suit against his current employer, Defendant Unified School District No. 500, and his supervisor, Defendant Stephen Vaughn, alleging retaliation in violation of Title VII of the Civil Rights Act[1] and 42 U.S.C. § 1981, as well as failure to timely pay overtime compensation in violation of the Fair Labor Standards Act.[2] Defendants move for summary judgment on all claims. Because no reasonable jury could find for Davis on any of his claims based upon the stark evidence presented, the Court grants Defendants' motion for summary judgment.

---

    [1] 42 U.S.C. § 2000e *et seq.*

    [2] 29 U.S.C. § 201 *et seq.*

## I. Factual Background[3]

Plaintiff Charles Davis began his employment as a custodian with Defendant Unified School District No. 500 ("USD 500") in 1991. From 1993 to 2001, Davis was employed as a head custodian at Bethel Elementary School. During that time, he received several poor performance reviews from the school principal, which Davis believed were due solely to his resemblance to the principal's ex-husband. From 2001 to 2007, Davis worked as the head custodian at Wyandotte High School under the supervision of principal Walter Thompson and Joseph Herbin, Coordinator of Buildings and Grounds. Davis also accused Principal Thompson of retaliatory conduct, although he could not articulate a reason for the alleged animosity.

On July 25, 2007, an assistant principal at Wyandotte High School found Davis lying naked on his stomach on the school roof, and when asked what he was doing, Davis said that he was taking a break and getting some sun. Davis agreed with the assistant principal's written account of the encounter, although Davis contended that he was wearing underwear. In response to this incident on the roof, Principal Thompson recommended to the school district's Director of Human Resources, Defendant Stephen Vaughn, that Davis be terminated from employment. Vaughn investigated the incident and concurred with the termination recommendation. The School Board also concurred.

Davis exercised his right to a termination appeal before a hearing committee of two School Board members. The hearing committee recommended discipline less than termination in part because the committee believed Davis was acting under the influence of prescription drugs. The hearing committee submitted a written report with their recommendation. That

---

[3] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, related in the light most favorable to the nonmovant, Davis.

report, written in 2007, stated: "Mr. Davis' supervisors describe the quality of Mr. Davis' work as average and/or marginal. Regarding his job performance, Mr. Davis contends that he has done the work requested but acknowledges that his work record is not without blemish."[4] The report went on to say that Davis's behavior and failure to notify his supervisor that he was impaired "raise[d] doubts about Mr. Davis' fitness to manage others,"[5] but also stated that the hearing committee was "confident that Mr. Davis has the character and ability to rebound from this circumstance and [we] encourage him to do so."[6] Based on the report from the hearing committee, Davis was suspended without pay for thirty days and demoted from the head custodian position to a custodian position. Head custodians and custodians have different duties and responsibilities, and receive correspondingly different compensation.

On April 9, 2008, Davis filed an administrative charge with the EEOC, alleging that his demotion from head custodian was an act of racial discrimination. Vaughn investigated the complaint with assistance from USD 500's Human Resources Department and outside counsel, and submitted written responses to the EEOC charge. The EEOC issued a notice of dismissal and right to sue on Davis's complaints on August 25, 2008, but Davis did not pursue a civil lawsuit.

Since returning from his suspension without pay in August 2007, Davis has been employed as a custodian with USD 500. Davis began applying for numerous positions within USD 500, including head custodian positions, in November 2008. Each building within USD 500 has a head custodian. When a vacancy for head custodian arises, the Buildings and Grounds

---

[4] Report of Hr'g Comm., Doc. 23-1, at 34–35.

[5] *Id.* at 39.

[6] *Id.* at 40.

department, led by Herbin, prepares a request for the Human Resources Department to fill the position. The Human Resources Department then posts the head custodian job vacancy internally for two weeks, during which any current custodian can apply for the position online. According to Vaughn, "[USD 500's] practice is not to hire from the outside for Head Custodian," but to promote current custodians.[7] The Human Resources Department receives all of the internal job applications, reviews them, and forwards qualified applicants for the hiring manager's consideration. For head custodian positions, the hiring managers are Herbin and the school principal at the building with the vacancy. The principal, sometimes with Herbin's assistance, conducts interviews and selects the candidate to fill the head custodian vacancy. The Human Resources Department receives notification of the selection and extends the offer to the successful candidate. The School Board must approve of the selection, and does routinely approve the hires for head custodian vacancy. The Human Resources Department and Vaughn individually do not make promotion decisions within the Maintenance and Custodial Department. Vaughn has the authority to disapprove of a candidate selected for a position, but he has never disapproved a transfer or promotion recommendation submitted by Herbin.

Between November 24, 2008, and November 30, 2012, Davis applied for fourteen positions with USD 500. Many of these positions were head custodian vacancies. Herbin testified that for each head custodian vacancy, the building administrator or school principal made the hiring decision. Davis contends that Herbin was party to those decisions because USD 500's interrogatories indicated that the School Board's final decision to hire the successful candidates was made upon the recommendations of the building administrator or principal,

---

[7] Vaughn Dep., Doc. 23-2, at 10, 54.

Herbin, and the superintendent. Davis also takes issue with the fact that he did not receive notice that he had been "referred for consideration" for two of the head custodian positions that he applied for.

In November 2010, Davis filed a second EEOC charge alleging that USD 500 had retaliated against him by denying him overtime pay and a promotion to head custodian. The EEOC dismissed the charge. Davis filed a third EEOC charge in October 2011, in which Davis again alleged unlawful denial of a promotion due to retaliation, race, color, and age. The Human Resources Department provided information for USD 500's response to Davis's third charge, which was dismissed by the EEOC. After receiving his third right to sue letter, Davis initiated this lawsuit on January 6, 2012.

Davis asserts two claims against USD 500 and one against Vaughn. One of Davis's claims against USD 500 alleges that the district failed to timely pay overtime compensation in violation of the FLSA. USD 500 compensates employees for hours worked in a week above 40 hours at a rate of one and one-half times the employees' regular wages. Custodians must receive approval for overtime from Herbin or the building administrator or principal at their work location. All USD 500 employees are required to report overtime work on a time sheet. If that time sheet is turned in no later than two days after the end of a pay period, the overtime compensation will be included in the next regularly scheduled paycheck. If, however, the time sheet is turned in more than two days after the conclusion of the pay period, the employee's overtime will not be processed and paid until the following pay period. Overtime compensation should be paid 15 to 30 days after submission of the time sheet.

In January 2010, Davis sent a complaint to the Human Resources Department, alleging harassment and retaliation and stating that Davis had not been paid overtime compensation due

to him. Vaughn investigated the complaint and sent Davis a letter that acknowledge the contents of Davis's complaint and informed Davis that no pay records had been discarded and no overtime compensation was owed. Although discovery dealt with overtime payments made in January 2010, Davis now claims that he was not compensated for overtime that he submitted on January 9, 2012, until February 15, 2012, and that overtime submitted on October 12, 2012, was not compensated until November 30, 2012.

Davis's second claim against USD 500 alleges that the district unlawfully retaliated against Davis for opposing racial discrimination by failing to promote Davis to head custodian, in violation of Title VII and 42 U.S.C. § 1981. Finally, Davis alleges that Vaughn retaliated against Davis in violation of § 1981. Both USD 500 and Vaughn move for summary judgment on all claims. Because no reasonable jury could find for Davis on any of his claims, USD 500 and Vaughn are entitled to judgment as a matter of law.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof, and must show the lack of evidence on an essential

---

[8] Fed. R. Civ. P. 56(c).

[9] *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.[10] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

**B.      Title VII of the Civil Rights Act of 1964**

Title VII of the Civil Rights Act prohibits an employer from treating a particular person less favorably than others on the basis of national origin.[14] To prove disparate treatment, a plaintiff must show that the defendant acted with a discriminatory intent or motive.[15] The parties' burdens of proof are subject to the tripartite *McDonnell Douglas* framework.[16] First, the plaintiff carries the initial burden of establishing a prima facie case of racial discrimination.[17] To make a prima facie case of retaliation, the plaintiff must prove the following: (1) that he engaged in protected opposition to unlawful discrimination, (2) that the plaintiff suffered

---

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding*, 374 F.3d at 927.

[14] 42 U.S.C. § 2000e-2(a).

[15] *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986 (1988).

[16] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1972).

[17] *Adamson v. Multi Community Diversified Servs., Inc.*, 541 F.3d 1136, 1145 (10th Cir. 2008).

materially adverse employment consequences, and (3) that a causal connection existed between the protected activity and the materially adverse action.[18]

If the plaintiff meets the initial burden of proof, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions.[19] If the defendant presents such a reason, the burden returns to the plaintiff who must show that the defendant's stated reason is a pretext for discriminatory intent.[20] To show pretext, the plaintiff "must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[21]

**C.     42 U.S.C. § 1981**

Section 1981 ensures to all persons the same right to make and enforce contracts "as is enjoyed by white citizens."[22] Employment contracts are among those protected under § 1981.[23] The standards for proving a violation of § 1981 are identical to those for proving a violation of Title VII.[24]

---

[18] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

[19] *McDonnell Douglas*, 411 U.S. at 802–03.

[20] *See Elmore*, 58 F.3d at 530.

[21] *Fye v. Okla. Corp. Com'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (quotation omitted).

[22] 42 U.S.C. § 1981.

[23] *See Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 (8th Cir. 1975); *Backlund v. Hessen*, 904 F. Supp. 964, 967 (D. Minn. 1995), *rev. on other grounds* 104 F.3d 1031 (8th Cir. 1997).

[24] *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

D. **Fair Labor Standards Act**

The Fair Labor Standards Act was enacted to ensure safe, efficient, and fair working conditions for employees throughout the country.[25] The FLSA includes minimum wage and maximum hour requirements that apply to all employees who do not fall within the Act's exemptions.[26] For these nonexempt employees, the FLSA mandates that employees who work in excess of forty hours per week must be compensated for the overtime work at "a rate not less than one and one-half times the regular rate at which he is employed."[27] "The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."[28] If, however, further calculation of compensable overtime is necessary, the employer must pay the excess overtime as soon as is practicable. "[I]n no event may payment be delayed beyond the next payday after such computation can be made."[29]

### III. Analysis

Davis asserts three claims for relief: (1) against Vaughn for retaliation in violation of 42 U.S.C. § 1981; (2) against USD 500 for retaliation in violation of Title VII and § 1981; and (3) against USD 500 for delayed payment of overtime compensation in violation of the FLSA. The Court will address Defendants' motion for summary judgment on each claim in turn.

---

[25] *See* 29 U.S.C. § 202.

[26] *See* 29 U.S.C. § 213.

[27] 29 U.S.C. § 207(a)(1).

[28] 29 C.F.R. § 778.106.

[29] *Id.*

### A. Retaliation Claim Against Vaughn

Davis first asserts that Vaughn violated 42 U.S.C. § 1981 by engaging in retaliatory conduct. Specifically, Davis alleges that Vaughn retaliated against him by failing to ensure that Davis's applications for head custodian at Silver City Elementary School and Welborn Elementary School were "referred for consideration," and by failing to investigate whether the candidates selected for head custodian position were more qualified than Davis.

Turning first to Davis's prima facie case for retaliation, the parties agree that Davis's EEOC complaints constitute protected opposition to alleged discrimination. The parties disagree, however, as to whether Vaughn took any employment actions that were materially adverse to Davis. The Tenth Circuit has said that an employment action is materially adverse if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits."[30]

In this case, Vaughn's failure to investigate the qualifications of successful head custodian applicants as compared to Davis does not fall within the definition of an adverse employment action. Furthermore, Vaughn presented records showing that Davis's application *was* referred for consideration for the head custodian position at Welborn Elementary School. Finally, Vaughn explained in an affidavit that, although he could not find any records showing which applications were submitted to Silver City Elementary School, the "referred for consideration" designation was something the Human Resources Department added more recently. Therefore, Davis's application may have been passed along for that head custodian

---

[30] *McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006) (citation and quotation marks omitted).

position.  Given the lack of evidence that Vaughn excluded Davis's application for the vacant head custodian position at Silver City Elementary School—let alone that a retaliatory animus motivated such exclusion—no reasonable jury could find by a preponderance of the evidence that Vaughn took adverse employment action against Davis.  Because Davis cannot prove a prima facie case of retaliation against Vaughn, the Court grants Vaughn's motion for summary judgment.

**B.     Retaliation Claim Against USD 500**

Davis also claims that USD 500 engaged in retaliatory conduct in violation of Title VII and § 1981 when it failed to promote Davis.  USD 500 claims that Davis has not made a prima facie case for retaliation, and that Davis cannot rebut USD 500's claim that building administrators, rather than the district, made the hiring decisions in question.  Turning to the first factor in proving retaliation, it is uncontroverted that Davis engaged in protected opposition to alleged discrimination when he (1) filed EEOC claims on April 9, 2008, November 3, 2010, and September 29, 2011; and (2) sent a letter to Vaughn on January 22, 2010, alleging harassment and retaliation.  Second, failure to promote is a recognized adverse employment consequence.  But Davis has not presented evidence sufficient to establish a causal connection between his protected activities and USD 500's failure to promote him.

Davis alleges that four pieces of circumstantial evidence show USD 500's retaliatory animus.  First, Davis points to the temporal proximity between his filing of this lawsuit on January 6, 2012, and USD 500's failure to hire Davis to fill head custodian positions at Welborn Elementary School and Frank Rushton Elementary School in February 2012.  Davis also relies on the proximity of discovery requests sent on September 11, 2012, and USD 500's failure to hire Davis to fill a head custodian position at Fairfax Bridges School on October 18, 2012.  But

Davis's argument is tautological—he filed this lawsuit alleging retaliation, but now relies on actions that had not occurred at the time of filing to sustain his claims. As USD 500 noted, Davis filed multiple charges with the EEOC, increasing the temporal proximity to Davis's applications. Even accounting for the greater likelihood of temporal proximity, periods of several months separate Davis's other protected actions and his rejection from head custodian positions. Therefore, Davis cannot rely on temporal proximity to show causality.

Second, Davis argues that USD 500's "use of subjective criteria"—such as reports that successful candidates had "good work ethic," the "best skills for the job," and gave the "best interview for the position"—is evidence of a causal connection between Davis's protected activity and his failure to secure a promotion. But the Tenth Circuit recognizes the use of subjective criteria as circumstantial evidence of pretext rather than evidence that establishes a causal connection between protected activity and adverse employment actions.[31] Furthermore, USD 500 has rebutted any presumption of a retaliatory animus that may arise from the use of subjective criteria by explaining that the building administrators were at least involved (if not the sole decision-makers) in hiring decisions in the district. Consequently, even if USD 500 had objective hiring criteria, the individual building administrators would negate any uniformity the objective criteria sought to enforce. Therefore, USD 500's subjective hiring criteria are not indicative of a retaliatory animus.

The third piece of circumstantial evidence that supposedly shows a causal connection between Davis's protected activity and his lack of promotion are alleged inconsistencies and contradictions in the evidence regarding Herbin's role in selecting applicants. Assuming these

---

[31] *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (stating that "evidence of pretext may include . . . the use of subjective criteria").

inconsistencies and contradictions in fact exist, they serve only to cast doubt on Herbin's credibility. Davis has not explained how such errors show a causal connection in this case.

Similarly, Davis alleges that USD 500 provided false explanations for its actions, providing a fourth piece of circumstantial evidence of retaliatory animus. But the statements that Davis categorizes as "false explanations" are simply contested facts and opinions of witnesses, not false explanations for USD 500's failure to promote Davis. Absent evidence of an actual lie regarding the reason Davis was not promoted, Davis's alleged "false explanations" offer no evidence of a retaliatory animus.

Because Davis failed to show a causal connection between his protected activity and USD 500's decision not to promote him, Davis has failed to show a prima facie case of retaliation. As a result, USD 500 is entitled to judgment as a matter of law.

C.  **FLSA Claim Against USD 500**

Davis contends that USD 500 delayed payment of overtime compensation in violation of the FLSA. The FLSA itself does not address when overtime compensation must be paid.[32] The Department of Labor has published an interpretive bulletin on the issue, which reads in part:

> There is no requirement in the Act that overtime compensation be paid weekly. . . . Payment [however] may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made . . . .[33]

Section 778.106 "is not a regulation and does not have the effect of law."[34] Courts have held that section 778.106 is a reasonable construction of the FLSA such that "when the amount of the

---

[32] *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135 (3d Cir. 1999).

[33] 29 C.F.R. § 778.106.

[34] *Nolan v. City of Chicago*, 162 F. Supp. 2d 999, 1004 (N.D. Ill. 2001).

FLSA overtime payment cannot be made at the time of the regularly scheduled payday, payments are to be made as soon as is practicable thereafter."[35]

Davis contends—allegedly for the first time[36]—that his overtime compensation was delayed twice in 2012. Specifically, Davis alleges that he submitted a timesheet requesting overtime compensation on January 9, 2012, and was not compensated until February 15, 2012, and that payment for a timesheet submitted on October 12, 2012, was not made until November 30, 2012. As support, Davis submitted copies of his timesheets and corresponding paychecks.[37] But the October timesheet shows overtime worked on October 16 and 17, as well as October 12. Davis's contention that the timesheet was faxed to USD 500 on October 12 must therefore be false. Davis offers no other evidence to show that the November 30, 2012, paycheck was not issued as soon as practicable. Additionally, the January timesheet has a handwritten note alleging that the timesheet was faxed to USD 500 on January 9, but includes no coversheet or date stamp as corroboration. And even if the January 9 timesheet was faxed on that date, payment on February 15 falls reasonably close to the 30-day estimate that Vaughn provided as necessary to compute and compensate overtime within the district. Consequently, the Court finds that no reasonable jury would conclude from the evidence presented that USD 500 violated the FLSA by unreasonably delaying the payment of overtime compensation for longer than necessary to compute Davis's due compensation. USD 500 is therefore entitled to summary judgment on Davis's FLSA claim.

---

[35] *Id.*; *see also Brooks*, 185 F.3d at 135–36.

[36] Defendants note that Davis's Complaint appears to allege a violation of the FLSA sometime earlier than 2012. According to Defendants, discovery focused on Davis's overtime compensation from January 2010. Because the Court is resolving Defendants' motion for summary judgment on the merits, it need not address this procedural irregularity.

[37] Custodial Overtime Report Form (Ex. WW), Doc. 34-24.

**IT IS ACCORDINGLY ORDERED** this 15th day of August, 2013, that Defendants' Motion for Summary Judgment (Doc. 22) is hereby **GRANTED**.

**IT IS SO ORDERED**.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE